Case 1:13-cv-04046-JMF   Document 32   Filed 07/08/13   Page 1 of 8     D&F

**STATE OF TENNESSEE**

# Office of the Attorney General



```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/08/2013
```

**ROBERT E. COOPER, JR.**
ATTORNEY GENERAL AND REPORTER

CORDELL HULL AND JOHN SEVIER STATE
OFFICE BUILDINGS

MAILING ADDRESS
P.O. BOX 20207
NASHVILLE, TN 37202

**LUCY HONEY HAYNES**
CHIEF DEPUTY ATTORNEY GENERAL

**LAWRENCE HARRINGTON**
CHIEF POLICY DEPUTY

**BILL YOUNG**
SOLICITOR GENERAL

TELEPHONE (615) 741-3491
FACSIMILE (615) 741-2009

June 28, 2013

**By e-mail: Furman_NYSDChambers@nysd.uscourts.gov**
The Honorable Jesse M. Furman
United States District Judge
United States District Court, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

    Re:   *In re Standard & Poor's Rating Agency Litigation*, No. 13-MD-2446 (JMF)

<u>This Document Relates to All Actions</u>

Dear Judge Furman:

    I write to the Court as proposed lead counsel for the plaintiffs, the Attorneys General of Arizona, Arkansas, Colorado, Delaware, the District of Columbia, Idaho, Iowa, Maine, Mississippi, Missouri, North Carolina, Pennsylvania, South Carolina, Tennessee, and Washington ("States").  The States respectfully submit this status letter pursuant to Section IV of the Court's June 12, 2013 Order.

    **(1)**    **Nature of the actions, principal defenses, and critical legal issues**

    A.    <u>Nature of the Actions</u>

    The fifteen state civil law enforcement actions pending before the Court in this consolidated proceeding were brought under state (or District of Columbia) consumer protection and deceptive trade practices statutes.  All fifteen enforcement actions name Standard & Poor's Financial Services LLC, and its parent company, The McGraw-Hill Companies, Inc. (collectively "S&P") as defendants.  One state, Mississippi, also asserts consumer protection claims against Moody's Corporation and Moody's Investor Service, Inc. ("Moody's").  The District of Columbia, Missouri, and South Carolina have additionally asserted claims against

S&P alleging state securities violations. Thirteen of the fifteen pending enforcement actions were filed on February 5, 2013. South Carolina's enforcement action was filed on February 13, 2013. Mississippi's enforcement action was filed earlier, on May 10, 2011. On March 6, 2013, S&P removed each enforcement action to federal court on the basis of federal question jurisdiction.[1] All of the States except for the District of Columbia filed motions to remand. S&P then petitioned the Judicial Panel on Multidistrict Litigation ("JPML") to consolidate and transfer these cases to a Multidistrict Litigation ("MDL") court and also moved the respective district courts to stay each enforcement action until the JPML had ruled on S&P's transfer motion.

These enforcement actions focus on unfair or deceptive misrepresentations that the States allege S&P (and Moody's[2]) made in connection with the credit rating services that it provides. S&P regularly engages in the analysis and rating of structured finance securities, including residential mortgage-backed securities ("RMBS") and collateralized debt obligations ("CDOs"). S&P's ratings are routinely relied on by investors and other participants in the financial markets located within these states. The States allege that S&P expressly, and by implication, misrepresented to the users of its ratings that the services it provides in connection with these ratings are independent, objective, and not influenced by either S&P's or its clients' financial interests. Structured finance securities are opaque investments, the value of which is difficult to evaluate for even the most sophisticated market participants. As a result, S&P's ratings services and its representations of independence and objectivity were particularly important to market participants seeking to obtain an assessment of the credit risk associated with such investments, and who rely on S&P's purportedly objective ratings services in making investment decisions.

The States' enforcement actions each allege that (1) S&P's representations of independence and objectivity regarding its structured finance ratings services were false, and that S&P knew these representations to be false; (2) S&P's rating methodologies were directly influenced by its desire for financial gain; and (3) S&P's concern over its market share influenced the manner in which it conducted surveillance on the structured finance securities that it had already rated.

The States are not challenging S&P's choice of rating methodology or the substance of any particular rating assigned to a structured finance security. The States' enforcement actions were filed to enjoin S&P from deceptively or falsely representing to consumers that the methodologies that it chooses and the ratings that it assigns are independent, objective and uninfluenced by either S&P's or an issuer's financial interests. The States contend that S&P's misrepresentations violated their respective state consumer protection statutes, which are designed to protect consumers from unfair and deceptive acts or practices in the conduct of trade or commerce.

---

[1] S&P also removed the Connecticut and Illinois enforcement actions, but prior to the JPML transfer order, both of those actions were remanded for being untimely, and in the Illinois decision, for lack of federal question jurisdiction. S&P chose not to remove the California enforcement action filed in state court on February 5, 2013.

[2] As explained above, the Mississippi action also names Moody's as a co-defendant. Mississippi asserts that Moody's engaged in substantively similar conduct as S&P, and Mississippi is seeking the same relief from both S&P and Moody's.

B.  Principal Defenses

S&P has in pleadings so far raised two primary defenses, which also serve as its purported basis for removing the States' enforcement actions to federal court. First, S&P argues that its credit ratings are protected speech under the First Amendment. Second, S&P argues that the States seek to regulate its actions, which the Credit Rating Agency Reform Act of 2006 ("CRARA") vests exclusively with the SEC. These defenses also serve as S&P's grounds for the declaratory judgment actions S&P filed against South Carolina and Tennessee described below. S&P also asserts that it properly managed the conflicts of interest inherent in the issuer-pays business model and maintained its independence and objectivity during the ratings process.

In response, the States assert that case law is well-settled that the First Amendment does not protect against speech that is false or misleading, which is precisely what the States allege S&P's statements about its independence and objectivity are. The States also do not challenge the substance of S&P's ratings, which S&P claims are entitled to First Amendment protection. It is axiomatic that federal defenses such as First Amendment defenses can never serve as the basis for federal question removal jurisdiction.

With regard to CRARA, the States do not seek to regulate how S&P issues its ratings or its registration as a Nationally Recognized Statistical Rating Organization ("NRSRO"). The States only seek to hold S&P accountable for its deceptive or false statements concerning the independence and objectivity of its credit ratings services. CRARA specifically contemplates and allows these state enforcement actions. 15 U.S.C. § 78o-7(o)(2) explicitly provides that the States may bring actions for fraud or deceit against NRSROs. Thus CRARA does not preclude the States from prosecuting S&P's wrongful conduct.

S&P has also asserted a host of affirmative defenses against the States in the answers it has filed, many of which do not apply against a state acting through its police power as a sovereign enforcement authority. The States anticipate filing appropriate motions to address S&P's irrelevant or inapplicable affirmative defenses.

C.  Critical Legal Issues

Resolution of the question of this Court's federal jurisdiction is of paramount importance to the States. Federal jurisdiction does not exist in these cases despite S&P's attempts to manufacture federal jurisdiction out of traditional federal defenses. S&P's March 6, 2013 removal of the States' enforcement actions serves only to inhibit the States' ability to effectively enforce their respective consumer protection laws in their respective state courts. The States thus respectfully request that the Court prioritize and decide all of the States' motions for remand at the same time and at the Court's earliest convenience.

The two courts that considered the remand motions prior to the JPML transfer order, the District of Connecticut and the Northern District of Illinois, both remanded the enforcement actions to the respective state courts. Notably, the Northern District of Illinois expressly held that "[e]ven if defendants' notice of removal had been timely, there is no basis for federal jurisdiction." *Illinois v. McGraw-Hill Companies, et al.*, No. 1:13-cv-01725, 2013 WL 1874279,

*4 (N.D. Ill. May 2, 2013). The District Court further provided analysis under *Grable & Sons Metal Prods. Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005), and determined that federal jurisdiction does not exist under *Grable* because "defendants have failed to show that federal issues are necessarily raised." *Id.* at *5.

### (2) Existing deadlines, due dates, and/or cut-off dates

Per Section IV of Your Honor's June 12, 2013 Order, all dates and deadlines except those set forth in the Order, have been stayed pending the July 11, 2013 initial conference. The following table sets forth all existing deadlines in the enforcement actions that have been carried over from the transferor courts.

| Short Case Name | Deadline | Outstanding Pleading |
|---|---|---|
| Delaware v. S&P | June 21, 2013 | S&P's response to the Complaint |
| Idaho v. S&P | June 7, 2013 | S&P's response to the Complaint |
| Maine v. S&P | July 8, 2013 | S&P's response to the Complaint |
| Mississippi v. S&P and Moody's | (stayed) | Defendants' response to the Amended Complaint |
| South Carolina v. S&P | June 20, 2013 | S&P's response to the Complaint. |

In S&P's declaratory judgment action against South Carolina, the District Court entered its standard scheduling order which was then stayed pending South Carolina's motion to dismiss and later S&P's motion to stay proceedings.

### (3) Outstanding motions

A.  Motions to Remand the State Enforcement Actions:

As noted above, the States (except for the District of Columbia) have all moved to remand their enforcement actions back to their respective state courts. The 2013 remand motions are substantively identical and argue that S&P improperly attempts to use federal defenses to create federal subject matter jurisdiction.[3] As federal jurisdiction is a threshold issue, the States respectfully request that the Court give priority to determining all of the pending remand motions at the same time.

In addition to Mississippi's 2013 remand motion, which Mississippi filed in response to S&P's untimely supplemental notice of removal on federal question grounds, there were two

---

[3] In addition, Mississippi makes the same timeliness argument upon which Connecticut and Illinois have already prevailed. North Carolina also contends that S&P waived its right to remove the case because S&P filed a Notice of Designation to transfer the State's case to N.C. Business Court, which had to be approved by the Chief Justice of the N.C. Supreme Court before being assigned to the Chief Special Superior Court Judge for Complex Business Cases. It was not until 16 days after opting for the Business Court designation that S&P filed its Notice of Removal. North Carolina asserts that this action evinced a "clear and unequivocal" intent by S&P to remain in state court, and thus constituted a waiver of the right to remove the case to federal court.

other outstanding motions in the Mississippi action. Like the Connecticut and Illinois enforcement actions that have already been remanded to their state courts, the Mississippi action was filed approximately two years prior to the other enforcement actions in this proceeding. In 2011, Mississippi filed a remand motion in response to S&P and Moody's joint notice of removal under the Class Action Fairness Act ("CAFA") and asserting diversity jurisdiction.[4] To date, S&P and Moody's have not filed an opposition to Mississippi's 2011 remand motion. Instead, S&P and Moody's jointly moved for remand-related discovery and sought a stay of the remand proceedings. Mississippi opposed the motion for remand-related discovery but nonetheless answered S&P and Moody's discovery requests. Both the 2011 CAFA / diversity remand motion and the motion for remand-related discovery remained pending at the time of transfer.

It is our understanding that S&P has responded to most but not all of these pending remand motions. S&P has not responded in the Colorado and Pennsylvania actions where the cases were stayed at S&P's request before S&P's response was due. Tennessee was unable to file its reply to S&P's response before that case was stayed. S&P moved to stay Mississippi's 2013 remand pending a decision on transfer and, even though that stay motion was not ruled on, S&P never filed an opposition to Mississippi's 2013 remand. As mentioned above, S&P and Moody's have also never filed a response to Mississippi's 2011 remand. In the interest of efficiency, the States' respectfully request that the Court consider all of the 2011 and 2013 remand motions at the same time.

    B.    <u>Rule 12(b) Motions Filed Against S&P by South Carolina and Tennessee in S&P's Declaratory Judgment Actions Against South Carolina and Tennessee</u>:

On February 4, 2013, S&P preemptively filed declaratory judgment actions in federal court against the Attorneys General of South Carolina and Tennessee after learning they were planning to file suit against S&P. Both South Carolina and Tennessee sent statutorily-required notices of intent to sue to S&P on December 20, 2012, and January 24, 2013, respectively.[5] In response to the letter, S&P contacted Tennessee and proposed to meet with Tennessee on February 4, 2013. S&P did not pursue the meeting and instead filed a declaratory judgment action against Tennessee in the United States District Court for the Middle District of Tennessee that same day. Counsel for S&P met with South Carolina on January 23, 2013, in response to South Carolina's pre-filing notice to discuss the contemplated action, and then subsequently filed its declaratory judgment action against South Carolina in the United States District Court for the District of South Carolina.

---

[4] Mississippi's pending 2011 remand motion regarding CAFA and diversity jurisdiction makes similar arguments to the first remand motion filed by Connecticut on the same issues and granted by the District Court in that case. *See Connecticut v. Moody's Corp., et. al.*, Civ. No. 3:10-cv-546 (JBA), 2011 WL 63905 (D. Conn. Jan. 5, 2011).

[5] On January 18, 2013, Idaho also sent S&P a statutorily-required notice of intent to sue. In response to that letter, on January 29, 2013, counsel for the Attorney General of Idaho had a telephone conference with counsel for S&P for approximately 15 minutes to discuss Idaho's contemplated enforcement action. S&P did not file a declaratory judgment action against Idaho.

South Carolina and Tennessee both filed timely Rule 12 motions to dismiss S&P's declaratory judgment actions on *Younger* abstention grounds under *Younger v. Harris*, 401 U.S. 37 (1971). S&P filed amended complaints as of right in both cases adding a second count alleging preemption under CRARA to its First Amendment argument, which mooted the motions to dismiss. S&P concurrently removed the pending State enforcement actions to federal court on March 6, 2013. South Carolina and Tennessee then filed timely Rule 12 motions to dismiss the amended complaints. S&P moved to stay its declaratory judgment actions against South Carolina and Tennessee at the same time it petitioned the JPML for consolidation and transfer. These motions to dismiss were pending at the time of the MDL transfer. South Carolina's motion to dismiss was fully briefed. Tennessee was unable to file its reply to S&P's response before that case was stayed. Because these motions to dismiss are dispositive, South Carolina and Tennessee respectfully request that they be permitted to provide new briefing under relevant Second Circuit law and have these motions to dismiss resolved using the same timetable as the pending motions to remand.

(4)   **Discovery**

No formal discovery has taken place in any of the pending enforcement actions, although the States have compiled a significant amount of information relevant to these actions through their pre-litigation investigations of S&P and Moody's. The States believe that they have sufficient information to engage in meaningful settlement negotiations. As described below, the parties have attempted to discuss settlement, but have been unable to reach settlement.

(5)   **Settlement discussions**

A.   On December 13, 2012, representatives of the Attorneys General of Connecticut, Illinois and Iowa, the United States Department of Justice ("DOJ"), and the Securities and Exchange Commission ("SEC") met with counsel for Defendants for approximately two hours in the District of Columbia to discuss potential settlement. This meeting was followed by telephone conversations and correspondence among counsel for the parties to discuss issues raised by the December 13, 2012 meeting.

B.   On January 3, 2013, representatives of the Attorneys General of Arizona, California, Connecticut, Delaware, the District of Columbia, Florida, Idaho, Illinois, Iowa, Maine Maryland, Mississippi, New Mexico, Pennsylvania, South Carolina, and Tennessee, the DOJ, and the SEC, met with counsel for Defendants in the District of Columbia for approximately one and one-half hours to discuss potential settlement. Some of the attorneys representing the Attorneys General participated in the January 3, 2013 meeting by telephone.

(6)   **Related cases**

A.   *People of the State of California v. The McGraw-Hill Companies, Inc. and Standard & Poor's Financial Services, LLC.*, No. CGC-13-528491 (San Francisco County. Super. Ct.): On February 5, 2013, the California Attorney General sued S&P in state court under the California False Claims Act, the California Unfair Competition Law, and the California False Advertising Law. No discovery has been taken to date. On May 31, 2013, S&P filed a demurrer (California state court equivalent of motion to dismiss) to California's false claims causes of

action, but not California's consumer claims. California's opposition is due on July 12, 2013, S&P's reply is due August 5, 2013, and the hearing is set for August 12, 2013. A further case management conference will also be held on August 12, 2013.

   B. *State of Connecticut v. The McGraw Hill Companies, Inc. and Standard & Poor's Financial Services, LLC*, X04-HHD-CV-10-6008838-S (Conn. Super. Ct., Hartford Complex Litigation Docket): On March 10, 2010, the Connecticut Attorney General sued S&P in state court in the state's sovereign enforcement capacity under the Connecticut Unfair Trade Practices Act. On April 9, 2010, S&P removed Connecticut's case to the United States District Court for the District of Connecticut under CAFA and diversity jurisdiction. On January 5, 2011, the District Court remanded Connecticut's case back to state court. *Connecticut v. Moody's Corp.*, Civ. No. 3:10-cv-546 (JBA), 2011 WL 63905 (D. Conn. Jan. 5, 2011).

   On August 22, 2011, S&P moved to strike Connecticut's Complaint. On May 10, 2012, the court rejected all of S&P's arguments and denied its motion to strike. *Connecticut v. Moody's Corp.*, 2012 WL 2149408 (Conn. Super. Ct. May 10, 2012). On May 30, 2012, S&P moved to reargue the court's decision. On January 28, 2013, the court again rejected S&P's arguments. On March 6, 2013, S&P again removed Connecticut's action to federal court citing federal jurisdiction under *Grable*. On April 24, 2013, the District Court remanded Connecticut's case to state court holding S&P's removal was untimely and without reasonable basis, and awarding costs and fees to Connecticut. *Connecticut v. The McGraw-Hill Cos., Inc.*, No. 3:13-cv-311 (SRU), 2013 WL 1759864 (D. Conn. April 24, 2013). Fact discovery is underway and scheduled to conclude by March 31, 2014. The trial has been scheduled for December 1, 2014.

   C. *People of the State of Illinois v. The McGraw-Hill Companies, Inc. and Standard & Poor's Financial Services, LLC.*, No. 12CH02535 (Cook County. Cir. Ct.): On January 25, 2012, the Illinois Attorney General sued S&P in state court for violations of the Illinois Consumer Fraud and Deceptive Trade Practices Act and the Uniform Deceptive Trade Practices Act. By written opinion dated November 7, 2012, the court denied S&P's motion to dismiss Illinois's Complaint in its entirety. On December 5, 2012, S&P filed an answer to Illinois's Complaint. On March 6, 2013, S&P removed Illinois's case to the United States District Court for the Northern District of Illinois, and subsequently moved to transfer it to an MDL. On March 13, 2013, Illinois moved to remand the case. On May 2, 2013, the District Court granted Illinois's motion to remand on the basis that the removal was untimely and there was no federal jurisdiction. *Illinois v. McGraw-Hill Companies, et al.*, No. 1:13-cv-01725, 2013 WL 1874279 (N.D. Ill. May 2, 2013). Written fact discovery is scheduled to be completed by November 1, 2013. A trial date has not yet been set.

   D. *State of Indiana ex rel. Chris Naylor, Securities Commissioner v. McGraw Hill Financial, Inc. and Standard & Poor's Financial Services, LLC*, No. 49D03-1306-PL025757 (Marion County. Super. Ct.): On June 27, 2013, the Indiana Attorney General sued S&P in state court pursuant to the Indiana Uniform Securities Act. No discovery has occurred, no motions have been filed, and no other action has taken place in the case.

   E. *United States v. McGraw-Hill Companies, Inc. and Standard & Poor's Financial Services LLC*, No. CV 13-00779-DOC (C.D. Cal.): On February 4, 2013, the United States filed

suit against S&P seeking civil monetary penalties pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1833a, based on allegations that S&P engaged in (a) mail fraud affecting federally insured financial institutions; (b) wire fraud affecting federally insured financial institutions; and (c) financial institution fraud. The Complaint alleges that in carrying out a scheme to defraud, S&P falsely represented that its credit ratings of RMBS and CDO tranches were objective, independent, uninfluenced by any conflicts of interest that might compromise S&P's analytic judgment, and reflected S&P's true current opinion regarding the credit risks the rated RMBS and CDO tranches posed to investors. On April 22, 2013, S&P filed a motion to dismiss the Complaint. Briefing on that motion is completed, and a hearing is scheduled for July 8, 2013. The parties made their initial Rule 26(a) disclosures on May 9, 2013, and filed their joint Rule 26(f) report on June 24, 2013. A scheduling conference is also set for July 8, 2013.

(7)     **Other information**

This consolidation presents a novel issue where an MDL has never before been created for and comprised solely of state Attorneys General enforcement actions. Typical MDL cases involve numerous private lawsuits involving complex common factual issues, class actions, and legitimate concerns about the ability and willingness of the parties to coordinate discovery efficiently. The States' enforcement actions do not share these characteristics, but instead involve straightforward facts of misrepresentations under state consumer protection law and they do not raise any federal question. Furthermore, the Attorneys General have a well-documented history of working together on multistate investigations and litigation, and can continue as appropriate to coordinate discovery and litigation efforts in their respective state courts with the other pending state court enforcement actions.

As discussed above, the pending motions for remand and motions to dismiss are dispositive issues that should be prioritized. Consistent with policies for handling MDL cases, the States submit that these motions should be resolved as promptly as possible given their threshold nature. The States submit that S&P has attempted to manufacture a federal question basis for removal to effectively delay the state law enforcement actions so that it can attempt to have these cases heard in a forum of its choice. The States respectfully request that the Court decide all of the States' pending motions for remand and motions to dismiss first as the Attorneys General, except for that of the District of Columbia, represent sovereign states acting in their sovereign capacity to enforce their respective state consumer protection laws in an area of traditional state police power in their respective state courts.

The States thank the Court for its time and consideration.

Respectfully submitted,

Olha N.M. Rybakoff
Proposed Lead Counsel for the States

cc: All Counsel of Record (by electronic mail)