USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 07/08/2013

CAHILL GORDON & REINDEL LLP
EIGHTY PINE STREET
NEW YORK, NY 10005-1702

| | | TELEPHONE: (212) 701-3000 | | |
|---|---|---|---|---|
| FLOYD ABRAMS | CHARLES A. GILMAN | FACSIMILE: (212) 269-5420 | ANN S. MAKICH | HOWARD G. SLOANE |
| L. HOWARD ADAMS | STEPHEN A. GREENE | | JONATHAN I. MARK | JOSIAH M. SLOTNICK |
| ROBERT A. ALESSI | JASON M. HALL | 1990 K STREET, N.W. | BRIAN T. MARKLEY | RICHARD A. STIEGLITZ JR. |
| HELENE R. BANKS | WILLIAM M. HARTNETT | WASHINGTON, DC 20006-1181 | WILLIAM J. MILLER | SUSANNA M. SUH |
| ANIRUDH BANSAL | CRAIG M. HOROWITZ | (202) 862-8900 | NOAH B. NEWITZ | ANTHONY K. TAMA |
| LANDIS C. BEST | DOUGLAS S. HOROWITZ | FAX: (202) 862-8958 | MICHAEL J. OHLER | JONATHAN D. THIER |
| SUSAN BUCKLEY | TIMOTHY B. HOWELL | | ATHY A. O'KEEFFE | JOHN A. TRIPODORO |
| KEVIN J. BURKE | DAVID G. JANUSZEWSKI | | DAVID R. OWEN | GLENN J. WALDRIP, JR. |
| JAMES J. CLARK | ELAI KATZ | | JOHN PAPACHRISTOS | HERBERT S. WASHER |
| BENJAMIN J. COHEN | THOMAS J. KAVALER | AUGUSTINE HOUSE | LUIS R. PENALVER | MICHAEL B. WEISS |
| STUART G. DOWNING | BRIAN S. KELLEHER | 6A AUSTIN FRIARS | DEAN RINGEL | S. PENNY WINDLE |
| ADAM M. DWORKIN | DAVID N. KELLEY | LONDON, ENGLAND EC2N 2HA | JAMES ROBINSON | COREY WRIGHT |
| JENNIFER B. EZRING | CHÉRIE R. KISER* | (011) 44.20.7920.9800 | THORN ROSENTHAL | DANIEL J. ZUBKOFF |
| JOAN MURTAGH FRANKEL | EDWARD P. KRUGMAN | FAX: (011) 44.20.7920.9825 | TAMMY L. ROY | ADAM ZUROFSKY |
| JONATHAN J. FRANKEL | JOEL KURTZBERG | | JONATHAN A. SCHAFFZIN | |
| BART FRIEDMAN | ALIZA R. LEVINE | | JOHN SCHUSTER | |
| CIRO A. GAMBONI | JOEL H. LEVITIN | WRITER'S DIRECT NUMBER | MICHAEL A. SHERMAN | *ADMITTED IN DC ONLY |
| WILLIAM B. GANNETT | GEOFFREY E. LIEBMANN | | DARREN SILVER | |

(212) 701-3621

June 28, 2013

Re:  *In re Standard & Poor's Rating Agency Litigation*,
No. 13-MD-2446 (JMF)

<u>This Document Relates to All Actions</u>

Dear Judge Furman:

McGraw Hill Financial, Inc. (f/k/a The McGraw-Hill Companies, Inc.) and Standard & Poor's Financial Services LLC (together, "McGraw Hill") respectfully submit this status letter regarding the above-captioned multidistrict litigation (the "MDL") pursuant to Section IV of the Court's June 12, 2013 Order. The MDL is composed of 17 cases, 15 of which were brought against McGraw Hill by the attorneys general of 14 states and the District of Columbia (the "State Actions")[1] and two of which were brought by McGraw Hill seeking declaratory judgments against state attorneys general (the "Declaratory Judgment Actions"). In one case, brought by the Attorney General of Mississippi, Moody's Corporation and Moody's Investors Service, Inc. ("Moody's") are also defendants.

<u>Nature of the actions and principal defenses</u>:

The 15 State Actions now before this Court were filed after a number of meetings between certain representatives of the States and between the States and representatives of the Civil Division of the Department of Justice ("DOJ") who were preparing a civil action against McGraw Hill that is now pending in the United States District Court for the Central District of

---

[1] Arizona, Arkansas, Colorado, Delaware, Idaho, Iowa, Maine, Mississippi, Missouri, North Carolina, Pennsylvania, South Carolina, Tennessee, Washington, and the District of Columbia are referred to collectively herein as the "States."

CAHILL GORDON & REINDEL LLP

- 2 -

California. At the joint press conference at which the federal and State Actions were announced, the States touted their joint efforts.

Not surprisingly, joint planning led to the filing of State Actions that are virtually identical. All were commenced under state consumer protection and/or blue sky laws. They are based on the same theory, assert the same basic factual allegations, and all seek injunctive relief, among other remedies. Yet they are far from typical consumer protection actions. The actions allege that Standard & Poor's, having stated that it was, among other things, "independent" and "objective," had made misrepresentations because it allegedly yielded to pressure from issuers of structured finance securities to provide higher ratings than it otherwise would have.

First and foremost, the allegations in the States' complaints are baseless. Standard & Poor's at all times acted independently, issuing ratings opinions that reflected the honestly held views of those analysts involved in rating each transaction or instrument.

In addition, threshold issues such as personal jurisdiction and statute of limitations defenses are implicated by a number of the State Actions, and a critical legal issue across them all is the States' unconventional use of their state statutes and whether the conduct complained of is within the proper scope and reach of those laws. McGraw Hill will argue that as a matter of both federal constitutional and statutory law and interpretation of the state statutes themselves, the State Actions must be dismissed.

Although some (but not all) of the States dispute that the State Actions are ultimately about the ratings themselves, these are securities claims through and through. The only way statements about Standard & Poor's independence and objectivity could ever have the capacity to mislead consumers, assuming *arguendo* that such amorphous statements could be actionable at all, would be through the vehicle of the purchase of a rated security. The States' apparent assumption that the statements of independence were false because the substance of analytical decisions was allegedly compromised is, at bottom, nothing but a challenge to the ratings themselves. Taken together, or even separately, the actions thus would undermine the role of the United States Securities and Exchange Commission ("SEC") as the sole regulator of Nationally Recognized Statistical Rating Organizations ("NRSROs") such as Standard & Poor's. The SEC is vested by federal statute[2] with exclusive authority to regulate procedures related to the

---

[2] In 2006, acting pursuant to its Commerce Clause authority, Congress enacted the Credit Rating Agency Reform Act ("CRARA"), expressly finding that "credit rating agencies are of national importance" and that safeguarding the integrity of the ratings process from conflicts of interest was an important federal interest. CRARA, Pub. L. No. 109-291, § 2 pmbl., 120 Stat. 1327, 1327 (Sept. 29, 2006). Among other things, CRARA delegated to the SEC "exclusive authority to enforce the provisions of this section in accordance with this title with respect to any [NRSRO], if such [NRSRO] issues credit ratings in material contravention of those procedures relating to such [NRSRO], including procedures relating to the prevention of misuse of nonpublic information and conflicts of interest." *Id.* § 4(a), 120 Stat. at 1332 (adding 15 U.S.C. § 78o-7(c)(1)). In 2010, Congress acted again, this time including provisions related to NRSROs in the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), Pub. L. No. 111-203, 124 Stat. 1376 (July 21, 2010). Among other things, Congress required the SEC to

Cahill Gordon & Reindel llp

- 3 -

prevention and management of conflicts of interest in the credit ratings industry. Pursuant to SEC mandate, Standard & Poor's has implemented policies and procedures to manage potential conflicts of interest. The States do not allege any failure to adopt and implement such policies. Indeed, the actions themselves amount to allegations that the SEC, possessed of all the same facts as the States, made erroneous determinations in the exercise of its federal regulatory and licensing power. As such, these actions raise issues regarding the permissible scope of state regulation in the context of the comprehensive and complex federal regulatory regime governing NRSROs.

Application of the state statutes at issue would, as well, be both inapt and unconstitutional. Ratings are, by their nature, statements of opinion, not of fact, and it is well-settled that there may be no liability for ratings opinions in the absence of proof both of objective falsity and of subjective disbelief by those individuals who actually rendered the opinions.[3] Cases from two Federal Circuits (there are none to the contrary) have similarly held that ratings are protected under the First Amendment unless they were disbelieved by those who issued them.[4] Yet each of the state statutes at issue here would impose liability without satisfying that standard, and the plaintiffs have not even attempted to (and cannot) plead in accordance with it.

McGraw Hill will also raise a number of substantive defenses to liability under the various state laws upon which the attorneys general base their claims. Critically, the alleged misstatements relied upon in the State Actions, which are general statements about the objectivity and independence of the analysis provided by Standard & Poor's, are not sufficiently concrete to be actionable under the state laws at issue here. Because of their general and non-specific nature, such statements simply lack the requisite capacity to mislead consumers or investors. This flaw alone is fatal. A recent decision of the Court of Appeals for the Second Circuit, *Boca Raton Firefighters & Police Pension Fund* v. *Bahash*, 506 F. App'x 32 (2d Cir. 2012), affirmed Judge Sidney Stein's dismissal of a private action brought against McGraw Hill based on purported misrepresentations that were either contained in the very documents at issue in the State Actions or from nearly identical ones. The appellate court agreed with the district court, *Reese* v. *McGraw Hill Cos.*, No. 08 Civ. 7202, 2012 U.S. Dist. LEXIS 83753 (S.D.N.Y. Mar. 30, 2012), that statements concerning the "integrity and credibility and the objectivity of S&P's credit ratings" were "so general that a reasonable investor would not depend on [them]."

---

promulgate additional regulations "to prevent the sales and marketing considerations of [NRSROs] from influencing [their] production of ratings." *Id.* § 932(a)(4), 124 Stat. at 1874.

[3] A recent case to that effect is *Tolin* v. *Standard & Poor's Financial Services, LLC*, 12 Civ. 8842, 2013 WL 3192115, at *6 (S.D.N.Y. June 24, 2013) (Engelmayer, J.) ("[F]or a credit rating to be actionable, a plaintiff must allege that the holder of the opinion reflected in the rating did not believe the opinion at the time that it was made."); *see also Ohio Police & Fire Pension Fund* v. *Standard & Poor's Financial Services LLC*, 700 F.3d 829, 842-43 (6th Cir. 2012).

[4] *Compuware Corp.* v. *Moody's Investors Services, Inc.*, 499 F.3d 520 (6th Cir. 2007); *Jefferson County School District No. R-1* v. *Moody's Investors Services, Inc.*, 175 F.3d 848 (10th Cir. 1999).

CAHILL GORDON & REINDEL LLP

- 4 -

*Boca Raton*, 506 F. App'x at 37. For similar reasons, we will urge upon the Court that, as a matter of law, the same statements are not ones that can be said to violate state consumer protection or securities laws.

Beyond that, no consumer transaction ever takes place with respect to the rating of structured finance securities. As the States emphasize throughout their complaints, the fees for such ratings opinions are paid by the issuers of the securities, not by consumers. The absence of any direct consumer transaction (or even an offer of such a transaction) is fatal to the States' consumer claims. Moreover, in some of the States, only statements with the capacity to deceive a substantial portion of the public are actionable under the consumer protection laws at issue. In addition, some of the state statutes do not reach the actions complained of here because they did not take place primarily in those states. Many of the state consumer statutes at issue also contain explicit "securities exemptions" limiting the scope and reach of those statutes to matter not relating to securities.

The above are just some of the principal defenses that preclude liability in this case.

The two Declaratory Judgment Actions in which McGraw Hill is plaintiff raise largely the same substantive issues as the State Actions, namely, the scope and reach of the state statutes and whether they would be unconstitutional as applied in these matters.

<u>Existing deadlines, due dates and cut-off dates</u>:

Pursuant to the Court's order of June 11, 2013, all dates and deadlines in the MDL are presently stayed.

McGraw Hill has answered the complaints in the Arizona, Arkansas, Colorado, Iowa, Missouri, Tennessee and Washington actions. Were this Court's stay not in place, it is our understanding that the following deadlines to respond to the remaining complaints would have been in effect (although some question exists about timing in light of the stays that were in place in certain of the transferor courts):

- Delaware (June 21, 2013)
- District of Columbia (July 8, 2013)
- Maine (July 8, 2013)
- North Carolina (June 21, 2013)
- South Carolina (August 5, 2013)

In Pennsylvania, there was no clear deadline in place for a response to the complaint due to the stay pending the resolution of the transfer motion. In Idaho, the court granted McGraw Hill's motion requesting that if transfer were granted, no response to the complaint would be due until a date is set by the transferee court. In Mississippi, McGraw Hill's deadline to respond to the complaint had been stayed pending resolution of the remand issue.

CAHILL GORDON & REINDEL LLP

- 5 -

Outstanding motions:

Currently pending are remand motions in 14 of the State Actions[5] challenging McGraw Hill's assertion of federal question jurisdiction. The remand motions filed by Arizona, Delaware, Idaho, Iowa, Maine, Missouri, North Carolina, South Carolina, and Washington were fully briefed at the time those actions were transferred into the MDL. The remand motions in Arkansas, Colorado, Pennsylvania and Tennessee were not yet fully briefed at the time those transferor courts granted stay motions by McGraw Hill.

Also pending are motions to dismiss in the two Declaratory Judgment Actions brought by McGraw Hill against Tennessee and South Carolina. The motion to dismiss the action against the South Carolina Attorney General is fully briefed. The State has not yet filed a reply brief on the motion to dismiss the action against the Tennessee Attorney General.

The Mississippi action, filed in 2011, was originally removed to federal court under the Class Action Fairness Act and on diversity grounds. Mississippi filed a motion to remand in 2011, which has not been fully briefed because McGraw Hill and Moody's have pending a fully briefed motion for an extension of time to respond and for remand-related discovery. On March 6, 2013, McGraw Hill filed a supplemental notice of removal asserting federal question jurisdiction in the Mississippi action. Mississippi then filed a second remand motion challenging the assertion of federal question jurisdiction. In response, McGraw Hill filed a motion to stay response time for the motion to remand, or in the alternative, for an extension of time to respond to the State's motion to remand, in order for all of the remand-related issues in the Mississippi action to be addressed together. Because that motion was not resolved prior to transfer, the second remand motion in the Mississippi action is also not yet fully briefed.

In the Delaware, Maine and Mississippi State Actions, motions by McGraw Hill to stay proceedings pending the transfer decision of the Judicial Panel on Multidistrict Litigation were still pending at the time of transfer; those motions are now moot.

Discovery:

While discovery has not yet taken place in any of the actions subject to the MDL, and the parties have agreed to a stay of discovery until after remand motions are decided, we understand that the state attorneys general already have obtained access to, among other documents, a significant portion of the documents that McGraw Hill produced to the United States Department of Justice ("DOJ") during the course of the three-year investigation that led to the DOJ's filing of a civil complaint in *United States* v. *McGraw-Hill Companies, Inc.*, No. 13-cv-00779 (C.D. Cal. filed Feb. 4, 2013).

---

[5] All of the States except the District of Columbia moved for remand prior to transfer.

CAHILL GORDON & REINDEL LLP

- 6 -

Settlement discussions:

Joint settlement discussions involving counsel for McGraw Hill, representatives of certain of the States, and the DOJ were held in person on December 13, 2012 for approximately two hours and on January 3, 2013 for approximately one hour. During the time period between the commencement of those settlement discussions and the filing of a civil complaint by the DOJ, letters on the topic of settlement were exchanged between the parties to those discussions, all of which, we understand, were forwarded to the States and discussed with them by the DOJ. The parties did not reach an agreement, and McGraw Hill does not believe further discussions would be fruitful at this time.

Related cases:

A number of private civil actions relating to structured finance instruments that suffered losses during the financial crisis are pending against McGraw Hill in state and federal courts. For the purpose of responding to the Court's request for a list of related cases, we provide below a list of those currently pending cases against McGraw Hill brought by state or federal government actors, and a brief description of the status of each:

*Indiana* v. *McGraw-Hill Companies, Inc.* (Marion Cnty. Super./Cir. Ct. filed June 27, 2013)
- McGraw Hill was made aware of this action only yesterday and has not yet been served with the complaint.
- Upon completion of service, we would expect to remove the case to federal court and seek its transfer to this MDL.

*California* v. *McGraw-Hill Companies, Inc.*, No. CGC-13-528491 (Cal. Super. Ct. S.F. Cnty. filed Feb. 5, 2013):
- No discovery has taken place.
- Defendants filed a demurrer on May 31, 2013, challenging the State's California False Claims Act claims.

*United States* v. *McGraw-Hill Companies, Inc.*, No. 13-cv-00779 (C.D. Cal. filed Feb. 4, 2013):
- No discovery has taken place.
- McGraw Hill's motion to dismiss the complaint is fully briefed and scheduled for oral argument on July 8, 2013.

*Illinois* v. *McGraw-Hill Companies, Inc.*, No. 12CH02535 (Ill. Cir. Ct. Cook Cnty. filed Jan. 25, 2012):
- The State and McGraw Hill have served discovery requests and have begun document production. Discovery is ongoing.
- No motions are currently pending.

CAHILL GORDON & REINDEL LLP

- 7 -

*Wyoming State Treasurer* v. *Moody's Investors Service, Inc.*, No. 178-434 (Wyo. 1st Jud. Dist. Ct. Laramie Cnty. filed July 7, 2011):
- Discovery limited to the issue of personal jurisdiction has been taken.
- Defendants McGraw Hill and Moody's moved to dismiss the complaint on substantive and jurisdictional grounds; that pending motion is fully briefed and has been argued.

*Connecticut* v. *McGraw-Hill Companies, Inc.*, No. HHD-cv-10-6008838-S (Conn. Super. Ct. Hartford Jud. Dist. filed Mar. 10, 2010):
- The State and McGraw Hill have served discovery requests and have begun document production. Discovery is ongoing.
- No motions are currently pending.

*California Public Employees' Retirement System* v. *Moody's Investors Service, Inc.*, No. CGC-09-490241 (Cal. Super. Ct. S.F. Cnty. filed Jul. 9, 2009):
- Discovery is currently stayed.
- An appeal of the trial court's decision on an anti-SLAPP motion by McGraw Hill and Moody's is fully briefed and pending before the intermediate appellate court; the court has not yet set a date for oral argument.

Other issues:

We anticipate that the first legal issue to be resolved by the Court will be the jurisdictional question raised by the pending remand motions. The States have argued that because their claims are brought under state law, no federal question jurisdiction exists over the State Actions. But the States have failed to engage except at the most superficial level with the complex issues raised by their own motions. As Judge Christopher Conner of the United States District Court for the Middle District of Pennsylvania observed with regard to the Pennsylvania action in the course of granting a stay pending the determination of the Judicial Panel on Multidistrict Litigation as to transfer:

> The instant jurisdictional inquiry necessarily demands an expansive review of case law governing the history and application of the *Grable* holding as well as case law and legislative history governing the scope and application of CRARA. The reviewing court will be required to scrutinize the [States'] factual and legal allegations in order to isolate those that implicate CRARA and, thereafter, identify the presence of any federal issues. Obviously, this is not a simple exercise.

*Pennsylvania ex rel. Kane* v. *McGraw-Hill Companies, Inc.*, No. 1:13-CV-605, 2013 WL 1397434 (M.D. Pa. Apr. 5, 2013), at *3, *quoted in Tennessee* v. *McGraw-Hill Companies, Inc.*, No. 3:13-cv-00193, 2013 WL 1785512, at *5 (M.D. Tenn. Apr. 25, 2013); *see also Arkansas* v. *The McGraw-Hill Companies, Inc.*, No. 4:13-cv-00117-KGB, slip op. at 3 (Apr. 26, 2013) (unpublished order). The fiction of the States' artful pleading aside, their claims necessarily call

CAHILL GORDON & REINDEL LLP

- 8 -

for determinations of disputed issues of federal law, and the federal interest in the resolution of these issues is enormous. The careful review of case law and legislation that Judge Conner described will, we believe, easily satisfy each element of the analysis set forth in *Grable & Sons Metal Products, Inc.* v. *Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), leading to the conclusion that there is federal jurisdiction over all the State Actions.

All of the conduct challenged here centers around the issuer-pays business model used by all the major ratings agencies in rating structured finance transactions. The SEC has explicitly addressed this business model and has found it permissible. The overlap between the claims here and this key area of SEC oversight—an area in which the SEC is today actively taking regulatory and rulemaking action—is striking. Further, allowing these multiple State Actions seeking injunctive relief to go forward in state court, with the possible result of a patchwork of conflicting mandates, would inevitably jeopardize uniformity and consistency, two cornerstones of any federal regulatory regime that are especially critical in relation to the national securities markets. Interpretation of the scope and reach of the state statutes themselves in this context may only be performed with reference to federal law: the same federal law that provides for the SEC's exclusive regulatory oversight on the issues that form the crux of plaintiffs' claims. For all of these reasons and others that we will detail in opposing the States' remand motions, we believe that the Court will find ample grounds for federal question jurisdiction in these matters.

We look forward to the opportunity to provide any further information that may be of assistance to the Court at the July 11 conference.

Respectfully submitted,

Floyd Abrams

Hon. Jesse M. Furman
United States District Court
  for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

BY E-MAIL

cc:   All Counsel of Record (by e-mail)