D7BTSTAC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    IN RE:

4    STANDARD & POORS LITIGATION        13 MD 2446 (JMF)

5    ------------------------------x
                                 New York, N.Y.
6                               July 11, 2013
                               2:00 p.m.

7

8    Before:

9                  HON. JESSE M. FURMAN,

                                 District Judge
10
                      APPEARANCES
11
    ARIZONA OFFICE OF ATTORNEY GENERAL
12    BY:  SUSAN MYERS

13    ARKANSAS OFFICE OF ATTORNEY GENERAL
     BY:  JAMES DePRIEST
14
    COLORADO OFFICE OF ATTORNEY GENERAL
15    BY:  ANDREW McCALLIN
         JENNIFER DETHMERS
16
    DELAWARE OFFICE OF ATTORNEY GENERAL
17    BY:  GREGORY STRONG
         JILLIAN LAZAR
18
    DISTRICT OF COLUMBIA OFFICE OF ATTORNEY GENERAL
19    BY:  GRANT MOY, JR.

20    IDAHO OFFICE OF ATTORNEY GENERAL
     BY:  OSCAR KLAAS
21
    IOWA OFFICE OF ATTORNEY GENERAL
22    BY:  STEVEN ST. CLAIR
         JEFFREY THOMPSON
23
    MAINE OFFICE OF ATTORNEY GENERAL
24    BY:  LINDA CONTI

25

D7BTSTAC

1                              APPEARANCES

2   COHEN MILSTEIN
         Attorneys for the State of Mississippi
3   BY:  MIMI LIU

4   MISSISSIPPI OFFICE OF ATTORNEY GENERAL
    BY:  MARY JO WOODS
5
    MISSOURI OFFICE OF ATTORNEY GENERAL
6   BY:  JOYCE YEAGER

7   NORTH CAROLINA OFFICE OF ATTORNEY GENERAL
    BY:  PHILLIP WOODS
8
    PENNSYLVANIA OFFICE OF ATTORNEY GENERAL
9   BY:  JOHN ABEL

10  SOUTH CAROLINA OFFICE OF ATTORNEY GENERAL
    BY:  JARED LIBET
11       CLYDE JONES, JR.

12  TENNESSEE OFFICE OF ATTORNEY GENERAL
    BY:  OLHA RYBAKOFF
13       JENNIFER PEACOCK
         JEFFREY HILL
14
    WASHINGTON OFFICE OF ATTORNEY GENERAL
15  BY:  SHANNON SMITH

16  CAHILL, GORDON & REINDELL
         Attorneys for The McGraw-Hill Companies, Inc.
17  BY:  FLOYD ABRAMS
         ADAM ZUROFSKY
18       SUSAN BUCKLEY
         JASON HALL
19
    SATTERLEE, STEPHENS, BURKE & BURKE
20       Attorneys for Moody's
    BY:  JOSHUA RUBINS
21       JAMES COSTER
         GLENN EDWARDS
22

23

24

25

D7BTSTAC

1          (In open court)

2          DEPUTY CLERK:  Matter of the Standard & Poors

3    litigation, 13 MD 2446.

4          THE COURT:  The way we're going to do the notice of

5    appearance is I will say the name of a party, and I'm going to

6    say it by state, and I will ask one counsel for each party to

7    identify him or herself and whoever else he wants to note for

8    record.

9          So starting with the State of Arizona, appearance

10   behalf of Arizona.

11         MS. MYERS:  Susan Myers for the State of Arizona.

12         THE COURT:  Welcome.

13         State of Arkansas.

14         MR. DePRIEST:  James DePriest, your Honor, on behalf

15   of the State of Arkansas.

16         THE COURT:  Thank you.

17         State of Colorado.

18         MR. McCALLIN:  Good afternoon, your Honor, Andy

19   McCallin for the State of Colorado, and with me is Jennifer

20   Dethmers.

21         THE COURT:  State of Delaware.

22         MR. STRONG:  Good afternoon, your Honor, Gregory

23   Strong on behalf of the State of Delaware, deputy attorney

24   general, and with me is Jillian Lazar, assistant attorney

25   general.

D7BTSTAC

1          THE COURT:  The District of Columbia.

2          MR. MOY:  Good afternoon, your Honor, Grant Moy for

3     the District of Columbia.

4          THE COURT:  Idaho.

5          MR. KLAAS:  Oscar Klaas for Idaho.

6          THE COURT:  Iowa.

7          MR. ST. CLAIR:  Steve St. Clair, assistant attorney

8     general for Iowa, with a Jeffrey Thompson, deputy attorney

9     general.

10         THE COURT:  Maine.

11         MS. CONTI:  Linda Conti, assistant attorney general

12    for the State of Maine.

13         THE COURT:  Mississippi.

14         MS. LIU:  Good afternoon, your Honor, Mimi Liu on

15    behalf of Mississippi, and with me is Mary Jo Woods.

16         THE COURT:  Missouri.

17         MS. YEAGER:  Joyce Yeager, assistant attorney general

18    for the State of Missouri.

19         THE COURT:  North Carolina.

20         MR. WOODS:  Good afternoon, your Honor, Phillip Woods

21    on behalf of North Carolina.

22         THE COURT:  Pennsylvania.

23         MR. ABEL:  Good afternoon, your Honor, John Abel on

24    behalf of the Commonwealth of Pennsylvania.

25         THE COURT:  South Carolina.

D7BTSTAC

1          MR. LIBET:  Jared Libet for South Carolina.  Along

2    with me is Sonny Jones.

3          THE COURT:  Tennessee.

4          MS. RYBAKOFF:  Good afternoon, your Honor, Olha

5    Rybakoff, senior counsel with the Tennessee Attorney General's

6    Office, and with me is Jennifer Peacock, senior counsel, and

7    Jeffrey Hill, senior counsel.

8          THE COURT:  And Washington.

9          MS. SMITH:  Shannon Smith on behalf of the State of

10   Washington.

11         THE COURT:  Thank you.

12         And for the McGraw-Hill defendants and/or plaintiffs.

13         MR. ABRAMS:  Good afternoon, your Honor, Floyd Abrams

14   for the defendants with my partners Susan Buckley, Adam

15   Zurofsky and Jason Hall.

16         THE COURT:  And for the Moody's parties.

17         MR. RUBINS:  Good afternoon, your Honor, Joshua Rubins

18   for Moody's with my partners James Coster and Glenn Edwards.

19         THE COURT:  Is there someone who has not noted an

20   appearance who would like to?

21         Very good.  Now I'm going to ask, for the time being,

22   my anticipation is that the folks who will do most of the

23   speaking will either be in my chair or at the front tables, but

24   for a little while least identify yourself before you say

25   anything since I'm still learning who you are and certainly the

D7BTSTAC

1    court reporter is learning who you are.

2         We are here for the initial conference in this MDL

3    proceeding, and I received and reviewed the preconference

4    letters dated June 28 from the parties, all of which have been

5    docketed and all of which were very helpful to me in preparing

6    for today, so thank you for those.

7         Pursuant to my endorsement on one of those letters, my

8    endorsement dated July 8, I appointed Ms. Rybakoff from the

9    Tennessee Attorney General's Office as lead counsel, and

10   Mr. Strong from the Delaware Department of Justice as liaison

11   counsel.

12        At my request, I also received yesterday various

13   submissions relating to the motion filed by -- I want to call

14   them McGraw-Hill defendants, S&P for the time being, Moody's in

15   the Mississippi action, seeking an enlargement of time and

16   remand related discovery, that is to say, additional materials

17   that were not on the docket in that action.

18        Now insofar as I have considered those materials in

19   connection with today's proceedings, I am inclined to think

20   they should be docketed as well, but I wanted to check if see

21   any objection to that.

22        MR. ABRAMS:  No objection.

23        MR. RUBINS:  No objection.

24        MS. LIU:  No objection.

25        THE COURT:  I am familiar with the facts and the

D7BTSTAC

1    background of the cases from your letters and from my review of

2    various other papers that have been filed in the individual

3    actions.  Now in that regard, you should not assume that you

4    need to recount the full background of the case and can assume

5    familiarity with what was put in the letters and the like.

6    With that in mind, I'm happy to what hear from counsel if

7    there's anything else I should know or any updates since the

8    June 28 letters.  So why don't I start with Ms. Rybakoff.

9              MS. RYBAKOFF:  Thank you, your Honor.

10             Your Honor, the states' submissions sets forth the

11   summary and history of the various state enforcement actions.

12   As the Court may have gathered, to the extent these are civil

13   law enforcement proceedings, moving forward swiftly and

14   efficiently is of paramount importance to the states.  And the

15   issue that the states submit and request that the Court

16   consider first and foremost is the threshold issue of subject

17   matter jurisdiction.  That matter has been almost fully briefed

18   in most of the proceedings.  I believe in the majority of the

19   cases the briefs have been submitted.  There are some responses

20   and replies that we have discussed in the pleadings that may be

21   due, but we respectfully ask that the Court consider those

22   matters first before anything else.

23             The states also, since the submissions were made and

24   since these matters were filed, have been working collectively,

25   which is something that we do regularly, and advancing the case

D7BTSTAC

forward, and we do want to see our respective cases prosecuted.
But on behalf of the states, that is a request that we would
make to the Court before anything else.  And of course, we're
happy to answer any questions the Court may have.

             THE COURT:  OK.  I suppose it might have been helpful
for me to give you a sense of the agenda today and what my
intentions are.  My intention is to set a schedule for briefing
of remand motions and the motions to dismiss as to declaratory
judgment actions, and we will also talk about the schedule for
other pretrial proceedings.  I agree with the proposal I think
of all parties that the jurisdictional issues should be
addressed first and relatively quickly.

             Before I hear from counsel for S&P and Moody's, a
couple of housekeeping questions.  I gather from your letters
there was an action filed in Indiana on June 27, and there was
an indication that may likely come to federal court and join
these proceedings.  Can you tell me the status of that case?

             MS. RYBAKOFF:  That case was filed.  It's our
understanding, your Honor, that responsive pleadings have not
been filed yet, and presumably the defendants are going to seek
to move the case to federal court.

             THE COURT:  All right.  I'll ask Mr. Abrams in a
moment.

             And I understand there were motions to stay the
filing, and I gather Delaware, Maine and Mississippi, all of

D7BTSTAC

1    which stay the case as pending the decision by the MDL panel.

2    That has obviously been mooted.  And should those be denied as

3    a formal matter?  I don't know if they remain live motions.

4    I'm prepared to deny them as a housekeeping matter, but I don't

5    know if that's necessary.

6         MS. RYBAKOFF:  From a housekeeping standpoint that

7    would seem to make sense at this point.  The Court has a

8    superseding order in place, of course, staying everything as we

9    move forward with these proceedings.  That would seem to make

10   sense.

11        THE COURT:  Anyone wish to be heard on that or object

12   to my just denying the motions to stay that I gather remain

13   pending in Delaware, Maine and Mississippi?

14        Seeing no objection, I will deny those as moot.

15        Anything further before I hear from counsel?

16        MS. RYBAKOFF:  Not at this time, your Honor.

17        THE COURT:  All right.  Mr. Abrams?

18        MR. ABRAMS:  Good afternoon, your Honor.  First, just

19   to report on the Indiana situation that you asked about, we

20   have been in touch with the attorney general's office in that

21   state.  We have advised them that we do intend to remove the

22   case still in state court now and to take steps to put that

23   case before you as part of this proceeding.

24        We have asked them if they would agree to be bound by

25   whatever schedule your Honor sets with respect to the remand

D7BTSTAC

1   motions.  They have said they will get back to us.  They

2   haven't done it.  I'm not criticizing them, they haven't got

3   back to us yet, but we expect to be hearing from them promptly.

4   In any event, whatever their response is to that, I think you

5   can assume that that matter will be before you.

6          Beyond that, I have nothing to say by way of

7   introduction except that we agree as well that you should deal

8   with the remand issue first, and counsel have agreed on a

9   proposed schedule, subject to your approval on that.

10          THE COURT:  Very good.  Any idea of the timing of the

11   Indiana action, when it might arrive here?

12          MR. ABRAMS:  We would expect to remove the case within

13   the next week, and promptly, within a day or so, file the

14   appropriate papers for it to be transferred here on a

15   conditional basis, unless the state objects to that.

16          THE COURT:  OK.  Thank you.

17          Mr. Rubins, is there anything that you would like to

18   add?

19          MR. RUBINS:  Thank you, your Honor.  I have no updated

20   information related to Moody's involvement in the Mississippi

21   action.  I would simply, your Honor, say that you intend to set

22   a schedule for the remand briefing, it's unclear whether that

23   also would include the 2011 remand briefing.  And I think your

24   Honor knows from our letter that our recommendation is that the

25   briefing on the 2011 remand, only in Mississippi, which is not

D7BTSTAC

```
1   ripe for briefing because of pending discovery motion, we defer

2   it until after the briefing on the federal question

3   jurisdictional issue applicable to all the cases because that

4   might render the other moot.

5           THE COURT:  OK.  Well, why don't we turn to that,

6   which is ripe for discussion.

7           Just so you know, I ask S & P, if you don't mind, to

8   submit a proposed order consistent with whatever we do today.

9   So if you could just pay attention, I suppose, and I know you

10  would pay attention, but if you pay attention with that in

11  mind, I appreciate it.

12          So Mr. Rubins, you can have a seat if you like.  I am

13  going to address the issue that you just raised in a moment.

14          Turning to the schedule, let's begin by discussing the

15  briefing schedule for the motions and structure of that

16  briefing.  As I know from your letters, there were basically

17  motions to remand in most of the removed actions except the

18  District of Columbia action, although I think if I found no

19  subject matter jurisdiction that, even in the absence of a

20  motion, that ruling would apply in the District of Columbia as

21  well since jurisdiction is not something that can be waived.

22          Then there are obviously the motions to dismiss that

23  were filed in the two declaratory judgment actions in South

24  Carolina and Tennessee.  My understanding from your letter is

25  that your proposal is to have two sets.
```

D7BTSTAC

1              Let's turn first to the remand motions.  My

2    understanding is that the proposal on the table is to have two

3    sets of briefing, one for Mississippi specific issues, that is

4    Mississippi unique issues, and one for issues and arguments

5    common to multiple states.

6              MS. RYBAKOFF:  Yes, your Honor, that's correct.

7              THE COURT:  And I take it the idea would be that the

8    common briefing, if you will, presumably Mississippi would

9    contribute to that to the extent it addresses the federal

10   question matter separate and apart from the timeliness issue

11   relating to removal on that ground in Mississippi, is that

12   correct?

13             MS. RYBAKOFF:  That's correct, your Honor.

14             THE COURT:  And then I noticed in the letter that

15   North Carolina, I take it, has an argument that S&P waived its

16   right to remove by filing a designation to transfer the case to

17   the North Carolina Business Court.  I presume that would be in

18   the same brief as well.

19             MS. RYBAKOFF:  We would propose to address that in the

20   common brief as well, your Honor.

21             THE COURT:  Then the issues in the Mississippi

22   specific brief, if you will, I presume would be two, number

23   one, that timeliness of the federal question removal notice,

24   and number two, the issues relating to the 2011 removal in the

25   CAFA issues and diversity jurisdiction, is that correct?

D7BTSTAC

1              MS. RYBAKOFF:  That's correct, your Honor.

2              THE COURT:  So as an initial matter, as I said, I'm OK

3    with that proposal.  Anyone wish to be heard on structuring it

4    that way, turn then to the question of timing and the like?

5              Good.  So as I said, that does raise the question of

6    timing, in particular, putting aside the briefing schedule for

7    a moment, the issue Mr. Rubins alluded to, namely whether to

8    have the Mississippi specific issues, and that is the issues

9    relating to the 2011 removal, briefed now in conjunction with

10   the other briefing or put off until later.

11             I am strongly inclined to do it now.  I don't see any

12   reason to put it off.  I agree that it may ultimately be moot,

13   but there are various scenarios in which it would not be moot,

14   and I think having multiple rounds of briefing in the case

15   would just delay the action further, and that action in

16   particular has been pending for a while.  All which have is to

17   say I don't see any reason to wait on it.

18             I know there's a pending Supreme Court decision that

19   may speak to some of the issues as well, although I looked at

20   the petition for certiorari in the case and it seems to me the

21   questions presented in that case really relates to definition

22   of "mass action" under CAFA.  And we'll discuss this in a

23   moment, but I am inclined to think that might not be relevant

24   to the issues in this case, which is to say I don't think

25   there's a reason to wait for the Supreme Court on that either,

D7BTSTAC

1 particularly since there's also various scenarios in which I

2 don't reach the question.  All that is to say as threshold

3 matter I'm inclined to reach the issues in conjunction with the

4 rest of the jurisdictional briefing.

5    Anyone wish to be heard on that?  And then we can

6 discuss the discovery related issues next.

7    MR. RUBINS:  Yes, your Honor, Joshua Rubins for

8 Moody's.

9    I would only say, your Honor, that I believe that

10 there is some likelihood that in any scenario the Moody's and

11 S&P 2011 removal, remand issue might not be ripe for your

12 Honor's attention.  If you decide that the federal question

13 grounds for removal generally does not apply, I assume that the

14 MDL would probably not go forward.  In the event that you did

15 decide that S&P was ripe in its argument, there would be no

16 reason to find -- reach a conclusion on the 2011 remand issues

17 as to S&P.  And I believe that the primary if not sole ground

18 that the MDL cited for including Moody's here in this MDL was

19 the possibility of conflicting rulings on the 2011 remand

20 issue.  And if in fact if you found in S&P's favor, it might be

21 that you decide to send Moody's back to Mississippi for a

22 ruling there and not reach a ruling as to the CAFA issue as to

23 S&P.

24    I wanted to mention that possibility, which is part of

25 what drove our recommendation.  I do think that, as to the

D7BTSTAC

1    Supreme Court issue, which may not at all be determined in your

2    Honor's view of the timing, that we do believe that that

3    determination would be likely relevant to this action.

4            THE COURT:  OK.  I hear you, and certainly think you

5    made those arguments in the letters.  I think although there

6    are various scenarios in which I could imagine I don't have to

7    decide the CAFA issues, I think for the reasons I described I

8    think it does make sense to brief it simultaneously because

9    there are some areas in which I might.  And in any event, I'm

10   not sure it makes sense to kick that can further down the road

11   and send it back to Mississippi with the issue still undecided.

12   So on that issue, we'll brief them all simultaneously.

13           That raises the question of the pending motion for

14   remand related discovery in Mississippi.  I understand from

15   your 28th letter, Mr. Abrams, June 28th letter, the parties

16   appear to be in agreement that I can decide that issue based on

17   the existing papers.  Does everyone agree with that?  And then

18   we can turn to the discussion of the issue.

19           MS. LIU:  Your Honor, Mississippi is not in agreement

20   with that.  To the extent that the defendants continue to

21   insist on moving for remand related discovery, which we believe

22   is wholly unnecessary to determine the real party in interest

23   question here, Mississippi would want to file a supplemental

24   opposition because, as the Court is aware, those papers were

25   briefed on the circuit law, and the Second Circuit is clear

D7BTSTAC

1      that the law of the transferring court controls, and we would

2      want an opportunity to be able to brief supplemental responses

3      under Second Circuit and the law of this Court.

4              THE COURT:  OK.  Am I correct in assuming that if I

5      deny the motion you wouldn't see the need for supplemental

6      briefing?

7              MS. LIU:  That's correct, your Honor.

8              THE COURT:  Let's turn to the merits of that issue.  I

9      assume everybody is in agreement that Second Circuit law does

10     affect my decision on that issue, whether based on the existing

11     briefing or supplemental briefing.

12              Is that correct, Mr. Rubins?

13              MR. RUBINS:  That's correct.

14              THE COURT:  Mr. Abrams?

15              MR. ABRAMS:  Yes.

16              THE COURT:  Here are my thoughts for the motion, and I

17     will hear from counsel.  Number one, I'm curious to hear

18     from -- I'll call you defense counsel for present purposes,

19     although obviously it's more complicated than that.  As far as

20     I can tell, there are sort of a handful of decisions that deal

21     with very similar issues, Judge Arterton's opinion in

22     Connecticut v. Moody's in 2011, Judge Thompson's opinion in a

23     case of the same name in 2009, and the Mississippi v. AU

24     Optronics case that the court granted cert on, and the Second

25     Circuit's decision which I'll have more to say about in a

D7BTSTAC

1    moment in <u>Purdue Pharma</u> earlier this year.

2            I'm curious, I did not see anything in any of those

3    cases any court suggest that discovery was warranted and

4    piercing the pleadings, as I think the Second Circuit put it in

5    <u>Purdue Pharma</u>, was warranted.  Which I'll talk about the merits

6    in a moment, but I'm curious if anyone can cite any precedent,

7    any court in similar circumstances that granted discovery on

8    these issues.

9            MR. RUBINS:  Yes, your Honor, I can't cite a case that

10   is on all fours in terms of the specific CAFA issue here.

11   Certainly this Court has granted remand related discovery in

12   another CAFA context, the <u>Anwar v. Fairfield Greenwich Ltd.</u>

13   case, 2009 Westlaw 11181278.

14           Is that the only thing -- you want me to rest at this

15   point, your Honor?  I agree that in the cases which deals

16   specifically with this real party in interest issue, I'm not

17   aware of and cannot cite you a case where there has been remand

18   related discovery.

19           THE COURT:  And what was the issue in the case that

20   you just cited to me?

21           MR. RUBINS:  I believe the issue in that related to

22   numerosity, which is also an issue here.

23           THE COURT:  OK.  Let me give you my thoughts on the

24   merits, because it strikes me that a lot of the briefings that

25   I read from the Mississippi District Court sort of the misses

D7BTSTAC

1   the boat for the following reason.  It seems to be addressing

2   largely the mass action prong of CAFA, but as far as I can

3   tell, the notice of removal in this case listed two grounds for

4   removing the case: one, the class action prong of CAFA; and

5   two, the diversity statute, which is complete diversity in a

6   more basic sense.

7            I understand that the statute is a little bit

8   convoluted, and there is a provision that defines a mass action

9   as a class action.  I would say that there's nothing finding a

10  class action is a mass action, which is to say I'm not sure

11  it's a two-way street.  If you look at the Second Circuit's

12  decision in Purdue Pharma v. Kentucky I mentioned a moment ago,

13  704 F.3d 208 (2d Cir. 2013), a January decision, the court

14  there, on very similar facts, basically separates mass action

15  from class actions and says the only thing -- the notice of

16  removal in that case cited only the class action component.

17  The Court noted in a footnote that there was probably a good

18  reason for that because the mass action is not transferable

19  under the MDL statute absent approval of the majority of the

20  members of the masses, if you will, and basically treated the

21  two definitions as entirely distinct.

22           Given that, I'm inclined to think that discussion of

23  whether this constitutes a mass action or not just isn't

24  actually the issue in this case, and that there are two grounds

25  for removal, whether it qualifies as a class action and whether

D7BTSTAC

1    there is complete diversity.  With respect to the first issue,

2    I am hard pressed to see how we distinguish this case from

3    Purdue Pharma where the court held that a parens patriae

4    action, in that case brought by Kentucky, does not qualify as a

5    class action for purposes of CAFA, and furthermore rejected an

6    argument for, as I said before, piercing of pleadings and

7    trying to evaluate the real party in interest and basically

8    decide it as a matter of law based on the pleadings and the

9    relevant statutory language, and didn't look behind that in any

10   way that would suggest that discovery was warranted.  So far

11   that reason, I'm inclined to think that discovery is not

12   necessary for that prong.

13          As I mentioned, there was the second basis for

14   removal, complete diversity under 1332.  In that the instance,

15   I think, frankly, it's also a little bit missing the boat in

16   the sense the question is not whether or not there are

17   individuals in Mississippi who are real parties in interest and

18   have a stake in the outcome of the litigation, but whether the

19   state is a real party in interest, which is to say that one

20   could find that the state and the individuals are real parties

21   in interest.  In which case, it would defeat complete

22   diversity, because I assume everybody agrees that the state is

23   not a citizen of Mississippi for purposes of the diversity

24   statute.  Putting that another way, I think the relevant

25   question is not whether there are individual citizens in

D7BTSTAC

1    Mississippi who are real parties in interest here but whether

2    the state is, and I don't think that the discovery that you are

3    have asked for gets to that issue, and I think it would be not

4    necessary to decide the question.

5         All of which is to say -- and Judge Arterton's opinion

6    in the 2011 case just provides an approach to that issue and

7    decides that case in a very similar context in a way that

8    doesn't suggest to me that discovery is necessary.  All of

9    which is to say that I'm inclined to think that the issues can

10   be decided as a matter of law based on the existing record,

11   including the limited discovery that has been provided, and I

12   don't really see the need for further discovery.

13        Those are my thoughts.  I'm happy to hear from you.

14   You can try to persuade me to rethink it.  If you do, I would

15   be curious to how would you distinguish Purdue Pharma since it

16   does seem to be quite close to this case.

17        MR. RUBINS:  I will attempt to do so, your Honor.  I

18   appreciate the opportunity.  I think the Purdue case footnote

19   really quite clearly provides the reason why this is

20   appropriately treated and analyzed as a mass action.  I mean

21   the footnote says that --

22        THE COURT:  Which footnote?

23        MR. RUBINS:  I thought maybe it's the same one you

24   were referring to, Number 4.  And where it says that the

25   peculiar drafting of the statute, and quoting another court,

D7BTSTAC

 1    gives mass action the character of a kind of statutory Janus;

 2    under CAFA, a mass action simultaneously is a class action for

 3    CAFA's purposes and is not a class action.  And for that

 4    reason -- that's one reason.  For that reason, when the initial

 5    notice of removal removed as a class action, that included mass

 6    action within that definition.  And so we believe this

 7    ultimately is removed potentially as a mass action and is

 8    appropriately treated that way.

 9            Second of all, I do think -- and I can't cite your

10    Honor authority --

11            THE COURT:  Can I ask you, with respect to that, how

12    do you square that with the fact that the court itself

13    acknowledged the statutory language with the rest of the

14    opinion in which it very clearly says Purdue Pharma did not

15    remove this case as a mass action, it relied solely on the

16    class action, so therefore we're not going to address the mass

17    action?  On your argument that a class action is a mass action,

18    the Court couldn't have done that, it would have had to address

19    that.

20            MR. RUBINS:  I think, your Honor, that kind of ties

21    into my second point on this issue, which is that unlike the

22    filing of complaints, for example, the filing of a notice of

23    removal can be clarified and explained in subsequent briefing.

24    And I think -- my reading of the Purdue case is that a mass

25    action was simply not something that was being argued, it

D7BTSTAC

1    wasn't a matter of you didn't use the right words in the notice
2    of removal, it's you're not speaking mass action.  Therefore,
3    this body of law related to treatment of mass actions doesn't
4    apply.  And I think in this case our notice of removal is
5    proper because it cited the appropriate statute.
6            THE COURT:  It did not cite the mass action component
7    of it, it cited 1332(d)(1).
8            MR. RUBINS:  I believe, your Honor, it cited something
9    that includes mass action within the definition of class
10   action.
11           THE COURT:  It does not.
12           MR. RUBINS:  I will take your word for it.
13           THE COURT:  Thank you.
14           MR. RUBINS:  And I would say that subsequent
15   discussion and briefing clarified the fact that it was a mass
16   action that was at issue, and therefore Perdue's treatment of
17   class action is not applicable here.  And that the authorities
18   we relied on from the Fifth Circuit, which are not in any way
19   inconsistent with the Second and Third Circuit authority, would
20   apply.
21           THE COURT:  Let's assume for the moment that you can
22   rely on the mass action prong of CAFA.  And I think if you the
23   look at your notice of removal you'll be hard to find any
24   reference to it, but let's assume you can.  Looking Footnote 5
25   of Purdue Pharma, the Court goes on to say -- notes that the

D7BTSTAC

 1    statutory definition of "mass action" explicitly excludes

 2    actions that, inter alia, assert claims "on behalf of the

 3    general public (and not on behalf of individual claimants or

 4    members of a purported class) pursuant to a State statute

 5    specifically authorizing such action, which was a quote from

 6    the Section 1332(d)(11).

 7             Now how do you get past that?

 8             MR. RUBINS:  I think that's the issue before the

 9    Court, which is does the complaint --

10             THE COURT:  When you say "the Court," do you mean me

11    or the Supreme Court?

12             MR. RUBINS:  Both.  But I think our position has

13    always been that this complaint, which does not simply claim on

14    behalf of the general public, it asserts claims that could only

15    be brought and could only refer back to individuals, in this

16    case, purchasers of securities.  So I don't think there's

17    anything in -- I think the Purdue case, because it cites the

18    Fifth Circuit case at the beginning of the decision, and it

19    does discuss the Caldwell case and it discusses the fact that

20    it's a minority view, it does not -- the Second Circuit has not

21    taken a position on the treatment of the mass action in term of

22    the analysis of the real parties in this.

23             THE COURT:  Is there any court that has addressed or

24    looked to -- done the real party in interest analysis with

25    respect to the language of the statute that I just quoted from,

D7BTSTAC

namely whether the claims are asserted on behalf of the general

public?  In other words, the cases that I have seen, including

Judge Thompson's decision in the 2009 case, I think, as well

as -- well, I think that case and even the language at the end

of Fifth Circuit's opinion don't suggest that you look at the

real parties in interest for the purposes of that provision,

but if it's brought on behalf of the state, that suffices.  Is

that wrong?

                MR. RUBINS:  My reading of the Fifth Circuit --

                THE COURT:  The Fifth Circuit might be an example.

                MR. RUBINS:  -- is that their reading is different.

And as I am probably familiar from the record and perhaps

familiar or not with even a case as recent a couple week ago

from the Northern District of Mississippi, all these cases that

the attorney general of Mississippi has run in which they have

asserted claims on behalf of some sector of the general public

for not only civil penalties and injunctive relief, but whether

they call it disgorgement or something else, benefits that

arise on behalf of individuals, they have all been found to

have been properly removed under CAFA.

                And we believe that that is a body of law that should

be applied here because it is not inconsistent, I believe, with

Second Circuit law.  It may be inconsistent with some lower

court decisions in the Second Circuit, but not with Second

Circuit law.  And it seems highly appropriate for a case

D7BTSTAC

1    brought by the attorney general of Mississippi to decide it

2    under the law that applies to all the other cases, and this

3    would be an anomaly to not look to that law.

4               THE COURT:  When you say "not look to that law,"

5    meaning --

6               MR. RUBINS:  The Fifth Circuit.

7               THE COURT:  But you agree that Second Circuit law

8    governs.

9               MR. RUBINS:  I do agree that Second Circuit law

10   governs, but I disagree if the law of the Second Circuit -- as

11   opposed to the decisions you cited from Connecticut, the law of

12   the Second Circuit I believe has not addressed this particular

13   issue.

14              THE COURT:  But you would agree, for example, to the

15   extent that it comes down to whether I take the claim-by-claim

16   approach as the Fifth Circuit did in Caldwell or the whole

17   complaint approach as some district courts in this circuit have

18   taken, you're agreed I'm not bound by the Circuit law on that

19   question, correct?

20              MR. RUBINS:  You are not bound.

21              THE COURT:  And insofar as the Second Circuit did not

22   reach it in Purdue Pharma, I'm basically free to make up my own

23   law.

24              MR. RUBINS:  You are, your Honor.

25              THE COURT:  Anybody want to say anything else with

D7BTSTAC

 1   respect to the discovery issue?

 2              MR. RUBINS:  Anything else I say about the discovery

 3   issue would sort depends on -- really depends on the Sixth

 4   Circuit body of law, and I think under that body of law we

 5   believe that certainly under that case law we believe --

 6   Moody's believes that discovery shouldn't be needed for the

 7   Court to the decide.  But clearly the state disagrees, and the

 8   state has, from our point of view, sort of engaged in kind of a

 9   gamesmanship as to the pleading and avoided the core issue and

10   tried to avoid the impact of all these cases.  And the

11   discovery that we framed was aimed at getting behind the

12   pleading, as the <u>Caldwell</u> case urges, and to nail things down.

13              Clearly if your Honor decided that the Fifth

14   Circuit -- that you would not consider any of the Fifth Circuit

15   precedence, I would agree that our need for discovery would no

16   longer exist.  But if your Honor did decide that the Fifth

17   Circuit law is applicable here or plays a role in the analysis

18   here, I would still believe it could be helpful to clarify that

19   all of these Fifth Circuit cases indeed are on all fours with

20   our case.  And also, because the state has, in the previous

21   proceedings, said that there is not numerosity and we don't

22   need the $75,000 threshold of controversy at issue, on those

23   issues, as in the <u>Anwar</u> case, we would want discovery, but I

24   can see that your Honor's reasoning might lead to an

25   elimination of the need for discovery.

D7BTSTAC

1              THE COURT:  OK.  I appreciate that concession.

2              Mr. Abrams, do you have anything to add?

3              MR. ABRAMS:  No, your Honor.

4              THE COURT:  One further question, Mr. Rubins.  If,

5     hypothetically, I were to rule that this case was not removable

6     as a class action or on complete diversity grounds and that the

7     Mississippi case was not removable as a federal question,

8     either on timeliness grounds or on the merits, but found that

9     it was removable as a mass action, what consequences flow from

10    that given that the mass actions are not transferable to an MDL

11    absent the consent of the mass members?

12             MR. RUBINS:  I hope I followed, your Honor.  I believe

13    that we would not belong here and we would belong in the

14    Northern District of Mississippi.

15             THE COURT:  OK.  Here's what I propose to do, I think

16    for the reasons that I articulated, and given the concession

17    Mr. Rubins made at the end there, I'm not inclined to think

18    that the discovery is -- or I'm inclined to think that

19    discovery may not be necessary, let's put it that way.  I think

20    there are paths that I could take that would render discovery

21    more appropriate, but I'm not inclined, based on the

22    speculative -- given that that is far from certainty, I'm not

23    inclined to have discovery before briefing.

24             Now what I think would be appropriate, borrowing from

25    Rule 56, Rule 56(d) has a provision that says where parties are

D7BTSTAC

1   opposing a motion for summary judgment and believes there are

2   facts necessary to justify opposing the motion, that you can

3   submit an affidavit or declaration basically identifying and

4   articulating those facts, and the Court can then decide whether

5   they're necessary or not and so forth.

6           And what I think might makes sense is to borrow from

7   that, and in your opposition to Mississippi's motion you can

8   file an affidavit that explains under what scenarios discovery

9   would be warranted, why you think it would be warranted under

10  the scenarios, and I would consider it in connection with my

11  consideration of the merits of the issue.  Given that there are

12  some areas in which I don't think I would need to reach the

13  issue, and if I go down the path where I do, then I will have

14  your affidavit or declaration.

15          Any objection to proceeding that way?

16          MR. RUBINS:  I think that's a great idea.

17          THE COURT:  Thank you.  And Ms. Liu, I would imagine

18  that you would no longer want to do a supplemental briefing on

19  discovery related issues.

20          MS. LIU:  That's right, your Honor.

21          THE COURT:  So I will deny the motion for remand

22  related discovery without prejudice to renewing it in a fashion

23  that I just described, but we'll proceed with the briefing on

24  the remand issue both generally and in respect to Mississippi.

25          Let's talk about page limits for a moment, and the

D7BTSTAC

```
1    default rules in this district are 25 pages, 25 pages and 10

2    pages for principal briefing, opposition briefing and reply.

3    This is your moment to tell me if you think that that would be

4    inadequate.

5              MS. RYBAKOFF:  The states are content with those

6    rules, your Honor.

7              THE COURT:  Mr. Abrams?

8              MR. ABRAMS:  Your Honor, we could live under those

9    rules.  I suggest, 35, 35, and 5.  Just seems to me it's a

10   matter of some moment for all the parties, and I think we could

11   do a better job with a few more pages.

12             THE COURT:  I'll tell you what, I tend to agree, given

13   what is at stake and the significance of the issue.  So I will

14   give at least each side 35 pages for principal briefs and 15

15   pages for the reply brief.  And that applies to Mississippi

16   specific briefing as well.

17             Let's turn to the motions to dismiss the declaratory

18   judgment actions.  I'm not sure there's quite as much that we

19   need to the discuss on that score.  I guess the only

20   question -- I think the briefing is necessary given the Second

21   Circuit law applies for my purposes.  Any reason that we

22   shouldn't just have it on the same schedule as we have on the

23   remand motions?

24             MS. RYBAKOFF:  The states would be content with that

25   schedule as well, your Honor.  That works.
```

D7BTSTAC

1        MR. ABRAMS:  So would we, your Honor.

2        THE COURT:  Great.  So let's turn to that schedule.

3   And you have proposed that opening briefs be filed by August

4   12, opposition briefs by September 11 and replies by

5   October 1st.  My question for you is:  Why do you need that

6   much time given all these issues have already been briefed?

7        MS. RYBAKOFF:  Your Honor, the only thought there was

8   that we had to recast our briefing in the context of Second

9   circuit law and also review the various briefs to ensure that

10  all the state positions are covered.  But we can certainly --

11  we would be happy to expedite it and consider any alternatives

12  that the Court may wish to suggest.

13        THE COURT:  Mr. Abrams?

14        MR. ABRAMS:  I agree with that, your Honor, that in

15  the drafting of this the representatives of the states

16  indicated they needed a good deal of time for coordination

17  internally, but that's their problem.  We can live with any

18  schedule that you set.

19        THE COURT:  Mr. Rubins?

20        MR. RUBINS:  The same for us, your Honor.

21        THE COURT:  OK.  So I'm inclined to move things a

22  little bit more quickly on theory that these are not new issues

23  for most of the people in this room.  And given that, I'm not

24  going to give you all quite as much time as you were asking

25  for.  I will have the opening briefs due on August 2nd.  Am I

D7BTSTAC

1   messing up vacation plans as I give you an August -- late

2   August deadline?

3            MR. ABRAMS:  We don't take vacations.

4            THE COURT:  Glad to hear it.  I will give three weeks

5   for opposition, so they will be due on August 23rd, and then

6   two weeks for -- well, given Labor Day, I will give you until

7   September 16th to file replies.

8            Anyone wish to be heard on that?

9            All right.  Now I understand that everybody would like

10  to have oral argument.  I suppose that's fine with me.  Am I

11  correct that everybody would like it?

12           MR. ABRAMS:  Yes, your Honor.

13           MS. RYBAKOFF:  Yes, your Honor, unless the Court feels

14  it's not necessary.  The issues are pretty straightforward.

15           THE COURT:  OK, why don't we go ahead, given we have

16  so many people involved here, and schedule something.  And if

17  between the submission of the briefs and that date I decide

18  it's not necessary, it will be more easy to cancel it than

19  schedule it.

20           So let's look at -- did I say September 16 was your

21  reply date?  I think I meant September 9.  I hate to so quickly

22  take back a gift, but I'm going to make it September 9.  Let's

23  look at -- how is the first week in October, morning of

24  October 4th for counsel?  Is that fair to everybody?

25           MR. ABRAMS:  That's fine with us.

D7BTSTAC

1          MS. RYBAKOFF:  That's fine with the states, your

2     Honor.  Would that also include the declaratory judgment action

3     arguments, the motions to dismiss?

4          THE COURT:  I would think so.  I would think we would

5     do them all together.

6          MS. RYBAKOFF:  Thank you.

7          THE COURT:  Anyone else need wish to be heard on that?

8     So schedule oral argument for October 4th, say 10 o'clock in

9     the morning.  And I'm guessing we'll be in this courtroom, but

10    you should make sure to check the docket beforehand because, as

11    you know, this is not my usual courtroom, so it will depend a

12    little bit on what is available, but I will be sure to post it

13    in advance of that date.

14          Anything else on the briefing of the motion front that

15    we need to address?  I think that covered what we needed to

16    cover, is that correct?

17          MS. RYBAKOFF:  Yes, your Honor.

18          THE COURT:  OK.  Let's turn then to other pretrial

19    proceedings, and here are my questions for everyone:  Based on

20    your letters, it seems like you have all agreed that discovery

21    and the like should be stayed pending my decision on these

22    motions.  My question is:  Why?  It's not as if these motions

23    are dispositive in the sense the cases will disappear, it's

24    just a question of where they would proceed, in federal court

25    and state court, and there are other related actions pending

D7BTSTAC

          1   already elsewhere.  Why not just use the opportunity to proceed

          2   and get started on that?  And what's the point in staying

          3   discovery?

          4            MS. RYBAKOFF:  Your Honor, the states recently gained

          5   access to documents that were collected by the Securities and

          6   Exchange Commission.  They have been placed in a repository.

          7   There's a considerable amount of information that has been

          8   made, maybe two and a half million documents.  We actually

          9   underwent training recently on the process organizing and

         10   reviewing that information, and we believe once we get through

         11   the information we'll be in a better position to plan discovery

         12   and tailor it more specifically to the issues that we want to

         13   focus on and also target depositions.  So from our standpoint,

         14   it was a matter of internally conducting this review and then

         15   being in a better position to begin formal discovery or paper

         16   discovery.

         17            THE COURT:  How long would you anticipate that process

         18   of review would take?

         19            MS. RYBAKOFF:  What we proposed with our briefing

         20   schedule, we would like to have several months, at least.  And

         21   what the states would like to propose is that the Court agrees

         22   and the remand matter is resolved, and assuming for any reason

         23   that we remain here, that we have the opportunity to confer

         24   again and work out a schedule because we'll be in a much better

         25   position to estimate what our needs are, we'll know what the

D7BTSTAC

1    schedules are in the related cases that are pending out there.

2    So if we can time it to begin after remand is decided, I think

3    that would work best for all the parties here.

4            THE COURT:  Mr. Abrams?

5            MR. ABRAMS:  Your Honor, we don't have a strong

6    position on that either way.  Those two and a half million

7    pages that they're talking about are our documents that we

8    turned over to the SEC and which they appear to have.  I'm glad

9    they're busy, but we would be prepared to start earlier.  But

10   in accommodation to the states, we are also prepared to wait

11   until your Honor rules.

12           THE COURT:  Mr. Rubins?

13           MR. RUBINS:  I'm not sure if we're in exactly the same

14   position.  I'm not sure if the documents described are

15   documents related to Moody's, and Moody's has certainly

16   produced millions of pages to various entities.  I don't know.

17   But in any case, we certainly would abide by what the states

18   want to do with the extra caveat that because Moody's is

19   separate and the issues are completely different, that we be on

20   a separate track, and it would seem more efficient to wait and

21   see what the states want to do.

22           THE COURT:  OK.  I'll tell you what I'm going to do.

23   Since we're going to be back here on October 4th -- in all

24   likelihood be back here on October 4th, I will defer that

25   question of setting a schedule for discovery and the like until

D7BTSTAC

```
1    then on the theory that, number one, I'll have a slightly

2    better sense of the jurisdictional issues, and number two, it

3    will give you an opportunity to confer between now and then

4    with respect to basically having a conference and more specific

5    discussions regarding deadlines.

6         I will tell you I understand from the letters that

7    this is a disagreement that the states would want a year for

8    document discovery and nine months for depositions -- sorry,

9    ten months for depositions, and S&P proposes nine months and

10   six months respectively.  I am strongly inclined to go to S&P's

11   way on that and move things along, particularly if we're not

12   going do it today, which is to say you have between today and

13   October 4th to engage in review of those documents.  And I

14   strongly urge you to use your time wisely, because you're not

15   going to get as much time as you would like, or you may not get

16   as much time as you would like when I set the deadlines.

17        MS. RYBAKOFF:  We appreciate that, your Honor.  We

18   were doing our best to estimate the scenario in terms of what

19   would happen if we had to go this route, but I think we'll be

20   in a much better position by the 4th to make a better

21   assessment.

22        THE COURT:  So I will direct that you confer with

23   respect to deadlines going forward.  Obviously, those deadlines

24   may ultimately be moot depending on my ruling on jurisdictional

25   issues, but if they're not, I do want to set them so they're in
```

D7BTSTAC

1      place and you don't need to come back a third time since there

2      are a lot of parties involved and I went to get things moving.

3              I think in light of that, that may be all we need to

4      address today.  The remaining pretrial deadlines and the like

5      can wait until that time.  I don't also think we need to

6      discuss the resolution of discovery disputes and the like since

7      there isn't going to be formal discovery between now and

8      October 4th, but are there other issues we should be addressing

9      today?

10             MR. ABRAMS:  No, your Honor.

11             MS. RYBAKOFF:  No, your Honor.

12             THE COURT:  OK.  I do want to ask, because it's my

13     practice to ask at virtually every civil conference, about the

14     prospects for settlement and whether there's anything that the

15     Court can do to facilitate settlement.  I understand from S&P's

16     letter it doesn't view settlement discussions or further

17     settlement discussions as fruitful at this time, but it's my

18     practice to ask.

19             So why don't I start with you, Mr. Abrams.

20             MR. ABRAMS:  Every case can be settled, your Honor.

21     Having been through extensive exchange of views in Washington

22     and elsewhere, it simply doesn't seem to us that this time is

23     really a perspicuous time to try to do that.  We're just

24     beginning, as your Honor knows, with a federal case in

25     California, just beginning here.  And while we don't object to

D7BTSTAC

1    sitting and talking, we really, just with all candor, don't

2    think it is the best time right now to go down that road.

3              THE COURT:  OK.  Anyone else wish to be heard on that?

4              MS. RYBAKOFF:  Your Honor, the only comment the states

5    would make is that many times in these cases defendants

6    approach the enforcement actions as if they were private

7    actions, and some of the issues, the different perspectives on

8    the legal questions and defenses I think have to do with that

9    distinction.  But once we get through the remand, I think that

10   may go a long way towards better positioning the parties for

11   future settlement talks.

12             THE COURT:  OK.  Given that, and given the

13   sophistication of the parties involved here, I'm not -- it

14   doesn't sound like there's any reason to do anything at this

15   stage, but if for some reason that changes even before you

16   anticipate it does, you can submit a letter to me requesting

17   whatever assistance I can provide in that regard and I'm happy

18   to refer to you magistrate or mediation or what have you, but I

19   will take my leave from you on that score.

20             As I said at the outset, I asked S&P to submit an

21   proposed order consistent with the rulings that I have made and

22   the deadlines that I set today, and I want that by close of

23   business on Monday.  You need to email a PDF proposed order to

24   the orders and judgments clerk the court, and I ask you email a

25   version in Word to me just in case I want to make any

D7BTSTAC

1   modifications to it.  I would ask that you show it to

2   co-counsel and to Mr. Rubins before you submit it just to make

3   sure that everybody is on the same page on that score.

4              Anything else that we need to do today?

5              MS. RYBAKOFF:  Nothing from the states, your Honor.

6              MR. ABRAMS:  Nothing, your Honor.

7              MR. RUBINS:  Nothing, your Honor.

8              THE COURT:  Thank you, everyone, again for your very

9   helpful letters that helped me prepare, and the matter is

10  adjourned.  Thank you.

11                              o0o

12

13

14

15

16

17

18

19

20

21

22

23

24

25